The Savannah, Florida and Western Railway Company *vs.* Flannagan.

---

## THE SAVANNAH, FLORIDA AND WESTERN RAILWAY COMPANY *vs.* FLANNAGAN.

1. The declaration alleging that the locomotive was not supplied with proper brakes, evidence respecting its brakes as compared with those of other locomotives belonging to the same company, was admissible.
2. Where the speed of a train at the time of a negligent homicide occurring upon a public street was material, evidence to show what

| | |
|---|---|
| 82 | 579 |
| 87 | 378 |
| 82 | 579 |
| 92 | 192 |
| 82 | 579 |
| 94 | 110 |
| 82 | 579 |
| 106 | 236 |
| 82 | 579 |
| d107 | 76 |
| 82 | 579 |
| 113 | 177 |
| 82 | 579 |
| e116 | 165 |
| 82 | 579 |
| 122 | 118 |
| 82 | 579 |
| 129 | 148 |
| 130 | 85 |
| 130 | 286 |

the speed was on the company's property just before reaching the street, was not irrelevant.

3. It was not error to receive evidence of doubtful admissibility ; and such was the character of the evidence showing the high speed at which the same engine was habitually run by the same engineer at the same place, and that he habitually neglected to ring the bell.

4. It was admissible to prove that after the homicide, the engines of the company were run more slowly along the street which was the scene of the accident.

5. What the company's master-machinist testified to at a previous trial of the same case, was not admissible against the company, he being still alive and accessible as a witness; but the evidence improperly admitted was not so material as to require a new trial.

6. Nor was there such materiality in the evidence touching the comparative expenses of the deceased and his widow whilst they were husband and wife.

7. The charge of the court construed as a whole was free from substantial error upon the material points.

8. In so far as the trial judge stated facts or his opinion upon facts, he dealt only with matters admitted or conceded. The charge so stating, it is to be taken as true, the contrary not appearing.

9. Inasmuch as the instructions warranted the jury in deducting not only necessaries but the cost of luxuries, from the value of the life of the husband, the rule of damages was quite as favorable to the company as that suggested in *Central Railroad vs. Rouse*, 77 *Ga.* 393, if not more favorable.

10. The fact that the husband killed by the running of the company's locomotive was one of the employés of the company, would not preclude his widow from recovering damages, though he may have been in some degree negligent, the homicide occurring on a public street, remote from the place at which the deceased rendered service to the company, and at a time when he was off duty and had no concern with the business or affairs of the company.

11. The verdict is supported by the evidence.

April 8, 1889.

Evidence.    Railroads.    Practice.    Damages.    Negligence.    Charge of court.    New trial.    Before Judge HARDEN.    City court of Savannah.    May term, 1888.

On July 2d, 1887, Annie Flannagan, widow of James Flannagan, sued the railroad company for $10,000 damages, alleging, in brief, as follows :   Her husband was employed as a day watchman at the company's wharves

in Savannah. Soon after six o'clock on the evening of
April 19th, 1887, while returning home from work, he
was run over and killed by an engine propelled by the
servants of the company, while doing the work assigned
them. His employment was wholly disconnected from
the running of the engine; he was in the exercise of
ordinary and reasonable care; and the homicide was due
to the negligence of the company and its servants. The
place where he was killed is contiguous to a plank-road
leading from the wharves at the river to the streets in
the city; it is crossed at different points by the track
of the company, and is a public thoroughfare of the
city, commonly used by pedestrians and vehicles. The
company failed to have any fence of any sort along its
road-bed at the place, although the thoroughfare was
only a few inches from its track. The engine was old
and worn out, with the brakes in bad condition, and
difficult to stop; the company was negligent in using it
at this place as it did and had been, knowing that it
was important to have engines which could easily and
quickly be controlled and stopped; it was negligently
being run at the rate of fifteen miles an hour, whereas
the city ordinances, the rules of the company, and pru-
dence and care, required that the speed should not have
been greater than four miles an hour. It backed upon
her husband without sufficient notice or warning to him
of its approach.

The defendant pleaded the general issue.

The evidence for the plaintiff was, in brief, as fol-
lows: Flannagan was a day watchman of the defend-
ant; sixty-three years old, hale, hearty, healthy and
well-preserved; of fine moral character, and faithful to
his duties. He had lost no time from work, except
that, a few years previously, he had an attack of rheu-
matism four or five days; possibly this made him limp

a very little, although some witnesses testified that he had no limp; he usually walked with a stick, but it was common for watchmen to do this; he never had paralysis. His wages were $1.40 per day; he had little personal expense and no extravagant habits, and gave the money to his wife, and all her expenses and those of the household were paid out of it; she got the greater benefit therefrom; they had no children except an adopted daughter. A plank-road twenty feet wide runs from a street of the city to the company's wharves, parallel with its track and extending to the ends of the crossties, which is in common use by people going to and from work daily; there is no other road to the wharf. About 6 : 15 o'clock on the evening mentioned, Flannagan was going along the plank-road towards the city, and was overtaken and accosted by a witness, and they walked on together a little distance. The engine in question was drilling cars; drays were coming down the plank-road from the city, and a number of other people were walking thereon. Flannagan at first was walking about midway of the road, and moved towards the railway track gradually to avoid the drays, and finally stepped upon the track for the same purpose; witness was about to step on the track at the same time, but just then he heard a yell followed by shouts and cries, and as he looked back, he saw the engine coming backwards at the rate of eight to twelve miles per hour, and about twenty feet from Flannagan; it was pulling no cars; a switchman was on the rear of it, whooping; it struck Flannagan before he could avoid it and ran over and killed him; as it passed the witness, he saw it reversed and the brake on the tender wound up; no bell was heard. It stopped about twenty feet past Flannagan's body. It was an old, rough engine with a hand-brake, unfit to do the work it had to do, hard to

manage, and leaked steam through the throttle-valve and elsewhere. The defendant had only one, or possibly two, other engines with hand-brakes. A witness saw this engine running when it was 500 or more yards from the spot where Flannagan was killed, and remarked upon the rapidity of its motion; another testified that it was moving considerably faster than witness was walking (which was rapidly) at a point 250 or 300 yards from the spot; before this it had often been seen running more than four miles an hour, but it had since been noticed to go much more slowly than before, though it yet often runs faster than a man walks. With a good brake, an engine in good condition, going at four miles an hour, can be stopped in ten feet. This engine had been seen frequently going from the wharf along this way without ringing its bell. The company does not now turn out engines with hand-brakes; they are obsolete. On a former trial of this case, witnesses for the defendant testified that there was a rule limiting the speed of the engine to four miles an hour.

The evidence for defendant was, in brief, as follows: Experiments were made with this engine to ascertain the time in which it would stop, running at the rate of four miles an hour; a signal was given, the steam shut off and the hand-brakes applied, and it stopped in seventy-four feet; again the signal was given, the engine reversed and the steam applied backwards, and it stopped in sixty-eight feet. Four miles an hour is somewhat faster than a man generally walks. This engine was a light one, in good condition and doing good service; it was provided with a good hand-brake, and so are all other engines, though those now turned out also have air-brakes. With the air-brakes an engine may be stopped in twenty to twenty-five feet. Flannagan was walking slowly with a stick and limped, though he was

generally well; he was stiff with rheumatism; he told a witness that he had paralysis. He had been a member of a relief association but allowed his membership to lapse, and when he applied to be reinstated, was rejected on account of bad health ; he had been discharged from one department of the company because he could not do the work required there, and was put into the position of watchman. There was evidence that he had lost considerable time from work. When the engine was in fifteen feet of him, he left the crowd and went upon the track. When first seen, he was walking about the middle of the road ; his back was to the engine, and there was no obstruction to prevent his seeing it ; it was forty-two to forty-three feet long, and stopped eight or ten feet past his body, making fifty-three feet from where it struck him. A switchman on the rear of the tender, and other people, shouted to Flannagan ; the engineer shut off steam, reversed and gave steam in the opposite direction, but before he could stop, Flannagan was run over ; the brake was applied by the fireman, who up to then had rung the bell, and it was ringing for two or three hundred yards. Everything that could be was done to prevent the accident. The engine had been running four or five minutes ; it was going about four miles an hour; the engineer considered that a safe speed, though there was no rule or any verbal instructions requiring it; he had an idea that when Flannagan left the middle of the road he would go upon the track. Flannagan was about thirty feet away from the switchman on the tender who was shouting, but apparently he did not hear; he was only fifteen feet from the engine when he stepped on the track. There is no rule of the company requiring any special rate of speed at this place ; if witness, on the former trial, spoke of it as being the rule to run only four miles an hour, he refer-

red to nothing written or printed, but to habit and understanding.

The jury found for the plaintiff $2,500. The defendant moved for a new trial on the following grounds:

(1) The court permitted a witness for the plaintiff to testify that he knew of no engine of defendant other than the one in question that had a hand-brake; the objection being that the declaration does not allege that there was negligence on the part of defendant which caused Flannagan's death in its using an engine supplied only with a hand-brake.

(2), (9) The court permitted a witness for the plaintiff to answer a question as to what was the habit of the engine which ran over Flannagan, and the engineer then running it, and as to the rate of speed at which it was run on the street where Flannagan was killed, by stating that, while he had never calculated the rate of speed, he knew the engineer was going right lively, and that the engine never went as slow as four miles per hour; the objection being that the rate of speed on other occasions was irrelevant.

(3) The court permitted the same witness to answer a question as to whether, since Flannagan's death, he had observed any difference in the speed at which the engines of defendant were run over that street, by stating that they go considerably slower since Flannagan was killed; the objection being that this was irrelevant.

(4–5) The court permitted two witnesses for the plaintiff to testify as to the rate of speed of this engine and the speed generally observed at this place prior to the homicide; one stating that, up to that time, they seldom ran at the rate of four miles an hour but often went faster, and the other stating that the speed was over eight to twelve miles an hour; the objection being that this was irrelevant.

(6) The court permitted a witness for the plaintiff to testify that he had not recently noticed any engine in that part of the country in steady use that had only hand-brake, though he had several years previously, before the improvements in locomotives became so general; the objection being that it was not alleged in the declaration that the defendant was negligent in using an engine equipped only with a hand-brake.

(7–8) The court overruled the defendant's motion to rule out the testimony of two witnesses for the plaintiff as to the speed of the engine in question at a point on the company's property several hundred yards from the place of the homicide, that point not being on the public street, the witnesses testifying that they did not observe the engine after it passed them, and could not tell whether it increased or decreased its speed; the objection being that this was irrelevant.

(10) The court permitted a witness for the plaintiff to testify as to the habit of the engineer as to ringing the bell while passing over the road in question, by stating that he had often seen them going along there without the bell ringing; the objection being that the testimony was irrelevant.

(11) The court permitted a witness for the plaintiff to testify as to what one Reilly, defendant's master of machinery, had testified on a former trial of this case in regard to engines of defendant that had hand-brakes only, by stating that his recollection was, that Reilly had testified that they did not now turn out engines with hand-brakes only, that only three old ones had hand-brakes only, and that they were obsolete; the objection being that this was hearsay and irrelevant.

(12–15) The court permitted the plaintiff and another witness to testify that Flannagan had no expensive or extravagant habits, that she received the greater bene-

fit from his wages, and that her expenses were greater, etc.; the objection being that this was irrelevant and impertinent.

(16–17) The court permitted witnesses for the defendant, on cross-examination, to testify that they knew of only one or two engines besides the one in question which were equipped with hand-brakes only; the objection being that this was irrelevant.

(18–27) Assignments of error upon the charge of the court, not necessary to be set out. See the opinion, heads 7–10.

(28) The verdict is excessive.

(29) The verdict is against the weight of the evidence and the principles of justice.

The motion was overruled, and defendant excepted.

CHISHOLM & ERWIN, for plaintiff in error.

DENMARK & ADAMS, contra.

BLECKLEY, Chief Justice.

The record makes the following questions on the admissibility of testimony: Was it competent to show that the engine which ran over the deceased was supplied with a hand-brake only, and that most or all other engines of the company had air-brakes? Was it admissible to show the speed of the engine while on the company's property and approaching the street where the accident occurred? Was it admissible to show the habitual high speed of the same engine when run by the same engineer, for some time previously, at the same place where the accident occurred? Was it admissible to show that after the accident the engines of the company ran more slowly at that place? Was it admissible to show the habit of the engineer whilst running the same engine previously at the same place,

not to ring the bell? Was it admissible to prove what the company's master-machinist had testified to on a previous trial? Was it admissible to prove that the deceased did not have expensive or extravagant habits; that he got less benefit from his wages than his wife derived from them; that her clothes and medical attention cost more than his; that she was sick very often, etc.?

1. The objection to the evidence touching brakes was, that it was irrelevant, because no foundation for it was laid in the declaration. The declaration alleged that the engine was old and worn out, with brakes in bad condition, and not supplied with proper brakes. This, we think, was a sufficient basis for the evidence in question.

2. The speed of the train in approaching the place of accident, although at the time the speed was noticed by the witness the train was not upon the street but upon the company's property, was not wholly irrelevant. The distance from the scene of the accident was not very considerable, and the engine was then upon the same journey which in its further progress resulted in the homicide. There is some little presumption that the speed of a train, when once shown, continues to be the same for a short distance at least, until a change of speed appears from the testimony; and we do not know that this presumption is varied by the fact that the train passed in the meantime from the company's property to the street. As trains do not run alone, but have one or more persons upon them, it is generally in the power of the company to show a change of speed, if any in fact took place.

3. The habitual high speed of this same engine, when run previously by the same engineer on the same street, was of doubtful admissibility. The authorities upon

the question conflict. For the affirmative might be cited : State *vs.* Boston, etc. R. R., 58 N. H. 410 ; State *vs.* Manchester, etc. R. R., 52 N. H. 528 ; Shaber *vs.* St. Paul R. R., 28 Minn. 103 ; Randall *vs.* Tel. Co., 54 Wisc. 140; Craven *vs.* Cent. Pac. R. Co., 72 Cal. 345 ; Henry *vs.* So. Pac. R. Co., 50 Cal. 176 ; Sheldon *vs.* Hudson River R. R., 14 N. Y. 218. For the negative, see Gahagan *vs.* Boston, etc. R. R., 1 Allen, 187; Chicago, etc. R. R. Co. *vs.* Lee, 60 Ill. 501 ; Balt. etc. R. R. *vs.* Woodruff, 4 Md. 242 ; Parker *vs.* Portland Pub. Co., 69 Maine, 173. Patterson's Rwy. Accident Law, 421, throws the weight of his opinion on this side. Upon so doubtful a question we think the court did not err in admitting the evidence. There are several cases in our reports holding that doubtful evidence is to be admitted rather than excluded.

What has been said upon this point applies equally to evidence touching habitual failure to ring the bell.

4. There is much authority to the contrary (see Patterson Rwy. Accd. Law, pp. 421, 422), but we think consistency with our own decisions requires us to hold that it was admissible to show that, after the accident, the engines of the company ran more slowly at the place of the accident than they did previously. The cause of this change of speed was a question for the jury. *Augusta etc. R. R. Co. vs. Renz*, 55 *Ga.* 126 ; *Central R. R. vs. Gleason*, 69 *Ga.* 200. The evidence was certainly of very slight value, but its admissibility did not depend upon what it proved, but upon its tendency.

5. As the master-machinist of the company was, so far as appears, still in life, and might have been produced as a witness, it was certainly error to admit in evidence against the company what he had testified to on a previous trial of the case. We can find no possible reason for recognizing his declarations, whether

made upon oath or not, as admissions by the company. Certainly the trial of an action for an alleged tort is no part of the *res gestæ* of the tort itself, and the general rule is that declartions of an agent are not to be attributed to the principal, unless they are a part of the *res gestæ*. But this testimony, taken in the light of all the facts of the case, was not of sufficient materiality to require a new trial because of its improper admission.

6. The same may be said touching the admission of evidence to prove that the deceased did not have expensive or extravagant habits; that he got less benefit from his wages than his wife derived from them; that her clothes and medical attention cost more than his; that she was sick very often, etc., etc. While some or all of this testimony was perhaps inadmissible, according to the strict rules of law, it did not, under the charge of the court, so enter into the measure of damages as to prejudice the railway company. And in this respect the present case is distinguishable from *Central Railroad vs. Rouse,* 77 *Ga.* 393. In that case the court recognized an estimate made upon what would be required to support the wife and children, as an element in arriving at the amount of damages. No such standard was pointed to in this case.

7. Several exceptions were taken to the charge of the court. The whole charge is set out in the record; and construing it altogether, we think it substantially stated the law of the case on the material points, with fairness to both parties. Some objectionable passages appear; and did they stand alone, unmodified by other passages, they might be held erroneous. We see no good ground for a new trial in anything which the charge contains.

8. The complaint that the judge expressed an opinion upon the facts as to two or three matters, is met by a

statement in the charge to the effect that these matters were admitted .or conceded. This statement should be taken as true, there being no verified contradiction of it in the bill of exceptions or elsewhere in the record. *Brantly vs. Huff*, 62 *Ga.* 532.

9. This case having arisen prior to the act of 1887 forbidding any deduction from the value of the life on account of personal or other necessary expenses of the deceased, the rule for computing damages laid down in *Central Railroad vs. Rouse*, 77 *Ga.* 393, was applicable. And not only did the presiding judge give the railway company the full benefit of that rule, but went further and treated luxuries which the deceased was accustomed to enjoy, as being a subject-matter for deduction, the same as necessary expenses. Certainly this was not only fair to the company, but liberal.

10. The instruction requested—that if Flannagan, at the time he received his injuries, was in the employ of the defendant, and if he contributed to the injury by any negligence, his widow cannot recover,—was properly refused; for the reason that Flannagan was not only not on duty as a servant of the company at the time he was killed, but was not at or near the scene of his duties. He was on the public street of Savannah, and occupied the footing, in every respect, with reference to the running of the company's trains at that place, of the general mass of the public. We think, therefore, that the rule of contributory negligence applicable to the public under like circumstances, was applicable to him. Nor does this view militate in any degree with the case of *Central Railroad vs. Henderson*, 69 Ga. 715, or any of the cases therein cited.

11. It is not clear to us that the damages awarded by the jury were excessive, or that the verdict was contrary to evidence or the law. We think the evidence

made a somewhat doubtful case for recovery, but the jury and the presiding judge having been satisfied with it, we see no cause for reversing their decision.

Judgment affirmed.