THE EAST TENNESSEE, VIRGINIA AND GEORGIA RAILWAY
COMPANY *v.* BURNEY.

Where the verdict against a railway company for killing stock by the
careless running of a train is satisfactory to the trial judge, and is
also satisfactory to this court upon the substantial merits of the
controversy tested by the evidence adduced by the company itself,
the case will not be remanded for a new trial on account of mis-
takes or inaccuracies in the charge of the court to the jury.

July 7, 1890.

Railroads.  Negligence.  Damages.  Verdict.  Charge
of court.  Before T. W. ALEXANDER, Esq., judge *pro
hac vice.*  City court of Floyd county.  September
term, 1889.

Reported in the decision.

BACON & RUTHERFORD and C. A. THORNWELL, by brief, for plaintiff in error.

WRIGHT & HARRIS, *contra.*

BLECKLEY, Chief Justice.

The action was for the killing of a mule by the negligent running of a passenger-train. Two witnesses testified that the mule was worth $150.00, and the plaintiff himself testified that it was worth from $135.00 to $150.00. The verdict of the jury was for $140.40. The mule was one of six head of live-stock turned by the plaintiff into a lot to get water. The fence being low and the bars down, they escaped and strayed upon the railroad. The engineer testified that from the station to where the mule was killed was an eighth of a mile, and that he could see the whole track from the station ; that he saw the stock, but none of them were on the track, they were on the side of the track ; that he did not stop the train or blow the whistle, but turned the cylinder-cock, which made a . noise on both sides of the engine; that blowing the whistle is sometimes more apt to drive stock on than off the track ; and that the engine ran past the mules without striking any of them. The fireman testified that he told the engineer to look out for stock ; and that the engineer turned the cylinder-cock, and that the train ran by the mules, they not being on the track, but on the side of it near the end of the cross-ties; that, looking back, he saw the baggage-car hit one of the mules as it turned, and throw it over to the water near the culvert. The mule was afterwards found there dead. The motion for a new trial complained of the verdict, and of the charge of the court as objectionable in two respects : (1) In instructing the jury that "If the employees of the road who were operating the train were prudent men, and had known that the mule alleged to have been killed belonged to them, would they 'as

prudent men have run the train just as they did? If so, the law would excuse them; otherwise not." (2) In adding, after charging §3034 of the code, that "If the bars were left down so that the mule did escape through them by reason thereof, it would be competent for the jury to consider this fact, and give the road credit to the extent of this degree of negligence, provided it increased the risk of the road, and provided further that the employees of the road did exercise all ordinary and reasonable care to avoid the injury, and could not avoid it." Though the form is subject to criticism, we are not sure that the matter of the first instruction is substantially variant from the standard of diligence which the company was bound to observe. The second instruction, treated as an attempt to state or supply the rule of contributory negligence, is manifestly inaccurate; but we think, as did the court below, that the verdict was correct, testing it by the evidence of the engineer and fireman, the witnesses who best knew the facts and who were introduced by the company. The mules were upon the side of the track near the end of the cross-ties. They were seen in full time to avoid injuring them. Even if they had strayed in consequence of the owner's negligence, the result of his negligence was discovered in time to save both parties harmless by the use of ordinary and reasonable care. It was no case of surprise and catching the employees of the company off of their guard. They were on guard, and saw the peril, but used no efficient means to ward it off. The whistle could have been blown, and if necessary, the train slowed up or stopped. The engineer does not pretend that what he did had any result upon the position or movement of the mules. He saw that it failed to drive them off, and yet did not try the effect of the whistle or anything else. That the whistle sometimes does more harm than good may be true; yet it is matter of public

knowledge that the whistle or stock-alarm is constantly used to frighten stock away from the track. The suggestion that the company is not liable, because the locomotive did not strike the mule, but only the baggage-car struck it, showing that the train did not run against the mule, but the mule against the train, is of no force. It was as much the duty of the company not to injure the mule by any part of the train, as not to injure it by direct contact with the locomotive. The nature and instincts of animals must be considered, and to run a train at high speed along close to where a number of them may be standing or walking, when a slight change of position by them would result in their destruction, has the appearance of recklessness. The baggage-car is usually next to the engine, and as it was that car which struck and killed the mule, the animal must have been in very close proximity to the track when the engine passed it. There was not time for it to get much nearer; and from the fireman's evidence it appears that it was only the act of attempting to turn round which brought about the catastrophe.

Under the facts we think, the trial court being satisfied with the verdict, there is no sufficient reason for remanding the case for a new trial. *Judgment affirmed.*