## CENTRAL OF GEORGIA RAILWAY CO. v. ROSS.

1. It was, in the trial of an action against a railway company for killing a mule, erroneous to permit, over a proper objection by counsel for defendant, a witness to testify: "They killed a good many stock out in that way —they kill the mules and cows. It has not been a year since they killed a mule right below where they killed mine."

2. This being a case in which the evidence on the main and controlling issue was close and conflicting, such an error as that above indicated entitled the defendant, against whom the verdict was rendered, to a new trial. This is so because the evidence illegally admitted tended to prejudice the jury against the company.

3. A new trial is the more readily ordered, because the liability of the defendant depended upon whether or not the plaintiff's mule was killed upon a public-road crossing, and it was not clearly shown that even if the killing occurred upon the crossing at all, it was one of the kind just mentioned.

4. The court erred in overruling the certiorari.

Argued February 13, — Decided March 18, 1899.

Certiorari. Before Judge Felton. Bibb superior court. November term, 1897.

*Hall & Wimberly, John R. Cooper* and *R. C. Jordan,* for plaintiff in error. *Hope Polhill,* contra.

LITTLE, J. Ross brought an action in a justice's court in Bibb county, against the Central of Georgia Railway Company, to recover damages for killing a mule. The case was tried before a jury in the justice's court, and a verdict for fifty dollars and cost was rendered against the company. A certiorari was sanctioned by the judge of the superior court, and on the hearing the certiorari was overruled by the superior court, and to that judgment the plaintiff in error excepted. The plaintiff in the justice's court testified, that his mule was killed at a road crossing (and inasmuch as the engineer for the defendant testified that he blew the whistle for this crossing, it will be taken that it was a public-road crossing); that it could have been seen over one hundred and twenty yards by the engineer before it was struck; that no whistle was blown, bell rung, or other signal given; and that the place at which the mule was killed was within the limits of the city of Macon. For the defendant the engineer in charge of the train testified, that the place where the mule was struck was outside of the city limits; that he blew his whistle for the crossing; that the mule was 25 or 30 yards from the crossing, coming up the track on which the engine was approaching; that the mule was on the edge of an embankment 15 or 18 feet high; that he could not stop within the distance from where he first saw the mule; that he

did not blow the whistle, and directed the fireman not to ring the bell, which might have frightened the mule and made him run on the track; that the animal did not appear to be frightened; that he thought that he could pass the mule, but that the animal must have shied back and the step of the tender struck him; that the train was running on a very fast schedule at the time he saw the animal, which was about one hundred yards away, and he did not think that he could have stopped the train within the distance, by reversing, without injuring the passengers; that if the mule had not stepped back he would not have been stricken; he was not thrown down; there were signs of blood and hair on the step of the tender, which must have stricken the mule as it passed. The fireman, who was on the engine, testified practically to the same facts as the engineer.

There was thus conflict in the evidence on a very material point, to wit, whether the mule was killed on a public-road crossing or not; for, if he was, and it was outside of the city limits, the omission to signal the crossing by blowing the whistle, and the failure to check the speed of the train, as testified to by the plaintiff in the justice's court, would have been such negligence as would have authorized the owner of the mule to recover, if the animal was killed in consequence of such omission. If, however, the animal was not at the road crossing, but some distance from it, walking on the side of the track toward the approaching train, as testified to by the engineer and fireman, then the omission to give the signals required by law, in approaching the road crossing, would not, relatively to this plaintiff, be negligence (*Central Railroad Co.* v. *Golden,* 93 *Ga.* 512), and the liability of the company must be determined by the proof or want of proof of other negligent acts. *Air-Line Rwy. Co.* v. *Gravitt,* 93 *Ga.* 369; *Georgia Railroad Co.* v. *Clary,* 103 *Ga.* 639. Whether the animal was killed at the crossing or away from the crossing was a question of fact to be determined by the jury under the evidence; and if nothing else appeared, their finding should stand as a proper determination of the facts of the case. *East Tenn. Railway Co.* v. *Burney,* 85 *Ga.* 635. But on the trial the plaintiff in the justice's court was al-

lowed to testify, over the objection of defendant's counsel, as follows: "They killed a good many stock out in that way — they kill the mules and cows. It has not been a year since they killed a mule right below where they killed mine." This evidence was clearly inadmissible. It might have been perfectly true that mules and cows had theretofore been killed by the running of trains on the same road at the place where the animal, for the killing of which damages are sought, was killed, and yet there might be no liability on the part of the company for this killing. The plaintiff was not entitled to recover at all, unless the killing was occasioned by the negligence of the employees of the company; and that question was not properly illustrated by evidence of the killing of other mules and cows. To sustain the admission of this evidence, we are cited to the case of *Savannah, Florida and Western Railway Co.* v. *Flannagan*, 82 *Ga.* 579. In that case a witness was allowed to testify to the habitual high rate of speed with which a particular engine was previously run by the same engineer on the same street. In passing on the admissibility of this evidence, Chief Justice Bleckley said, that such evidence was of doubtful admissibility, but that on "so doubtful a question we think the court did not err in admitting the evidence." But the ruling in that case does not support the admissibility of the testimony which was received in this case. There the testimony was confined to the same engine, run by the same engineer, on the same street; and Chief Justice Bleckley cited a large number of cases pro and con on the admissibility of such evidence when it was confined to the identical place, and the identical locomotive operated by the same person. The admissibility of the evidence must have been sustained alone to show the habitual negligence of the particular person who it was claimed was guilty of the particular act. See also *E. T., V. & G. Rwy. Co.* v. *Kane*, 92 *Ga.* 187. The proposition here, in effect, would be, that all of the engines of this company were, by the different engineers, accustomed to kill mules and cows at this place. The ruling in the *Flannagan* case was quoted as authority in the case of *Atlanta and West Point Railroad Co.* v. *Smith*, 94 *Ga.* 107, for the admissibility of the evidence as to the character of

the plaintiff for being prudent or reckless in the conduct of his business, for the purpose of showing that he was habitually reckless; and this court, through Mr. Justice Lumpkin, said: "Chief Justice Bleckley said it was of doubtful admissibility; and besides, there is some difference between proving habitual acts of recklessness or negligence at particular times and places, and proving the general character of a particular person for recklessness, or the contrary." Inasmuch as the diligence of the company to prevent killing the animal varied in character, according to the fact as to where the killing did occur, that is to say, whether it occurred on a public railroad-crossing, or on the embankment where the company's track was' laid, away from the crossing, and this material question was closely contested, the admission of this illegal testimony had a tendency to prejudice the case of the defendant; and for this reason the certiorari should have been sustained.

*Judgment reversed. All the Justices concurring.*