### CITY OF DALTON v. HUMPHRIES.

1. Where suit was brought against a city for damages alleged to have been caused by the negligence of the city in digging and keeping open a ditch in the public streets, resulting in an injury to plaintiff by reason of the horse which he was driving falling therein, and where the defendant denied that it was negligent, or that the open ditch was the proximate cause of the injury, but insisted that the proximate cause was that the plaintiff negligently caught the horse by the bridle after he had fallen into the ditch and had come out, and the horse kicked and caused the injury to plaintiff, the court should have instructed the jury that if it was shown that the city had caused the ditch to be dug and thus created the situation of peril, and the plaintiff put himself in a position of danger relative thereto, it was a question of fact for the jury to say, under all the evidence, whether he acted with ordinary care and prudence, and what the proximate cause of the injury was.

2. Where there is a conflict in the testimony as to a material issue in the case on trial, it is error to instruct the jury that "You may believe that witness or those witnesses who have the best means of knowing the facts about which he or she testifies, and the least inducement to swear falsely," without the qualification that the witnesses in all other respects are found to be equally credible.

3. The general rule is that isolated acts of negligence, similar to the one complained of, can not be shown. Accordingly it was error, on the

trial of a suit against a city for damages, brought by one who was alleged to have been injured by the falling of a horse into an open ditch dug in a public street of a city, without the placing of a sufficient number of signal lights (but two being placed) to warn travelers of the danger, to allow a witness to testify that a few days prior to the injury he had passed the ditch and noticed only two lights.

4. It was likewise error to permit a witness for the plaintiff, where it was not shown what was the general custom of using red lights on open ditches in cities, to testify that "Wherever we see a red light, it means for you not to drive over that red light; and if they were 30, 40, or 50 feet apart, that means for you to drive between them."

5. In a suit by one against a city to recover damages for injuries sustained by the plaintiff while he and two companions were being driven by one of these two, with his consent, in a buggy drawn by a horse, which went into an open ditch dug by the city, where the city had sought to warn the traveling public of the danger by signal lights, there being evidence to warrant such instruction, it was error to fail to charge the jury on the subject of whether the driver was negligent, and, if so, whether that negligence was the proximate cause of the injury.

6. A juror is not disqualified to try a case where he is the nephew of one whose wife is a sister of the mother of a plaintiff in another suit growing out of the same transaction as the one on trial. Such a family connection did not bring such juror within the prohibited degrees of kinship and disqualify him for jury service in the plaintiff's case.

(a) Where the court asked all of the jurors whether any of them were related by blood or marriage in any way to the plaintiff, or to two other persons who had similar suits against the defendant, growing out of the same transaction, it is not cause for a new trial that one of the jurors trying such case, and who was not related to the plaintiff, remained silent.

7. The court erred in overruling the motion for a new trial.

FEBRUARY 28, 1913.

Action for damages. Before Judge Fite. Whitfield superior court. January 19, 1912.

*M. C. Tarver,* for plaintiff in error.

*Maddox, McCamy & Shumate,* contra.

HILL, J. Humphries brought suit against the City of Dalton, alleging that while driving along one of the principal streets of the city, in company with two others, the horse and buggy went into a ditch which had been dug and left unprotected by the city. The plaintiff sustained injuries, and the suit was to recover damages. The material allegations of the petition were denied by the defendant. A verdict for the plaintiff was rendered. A motion for a new trial having been overruled, the defendant excepted.

1. Error is assigned upon the following charge of the court:

"If you find from the evidence that the plaintiff was thrown from the buggy as he contends, and those in the buggy were in a dangerous condition, and he took hold of the horse for the purpose of extricating them from such condition and preventing them from being injured, and in doing so he was injured by the horse then and there, as he contends, he would be entitled to recover, if he was without fault, and the defendant was at fault in not keeping its streets at that place in a reasonably safe condition; but if after he was thrown from the buggy, and those in the buggy were not in a dangerous condition and the plaintiff knew it, or ought to have known it, and he took hold of the horse and was hurt thereby, he can not recover for the injury done by the horse." It is insisted that if the plaintiff left the buggy in safety and attempted to stop the horse, as he insisted he did, and was injured by the horse, the alleged negligence of the city was not the proximate cause of his injury, and he would not in that event be entitled to recover. While the charge complained of was not entirely accurate, we can not say that it is cause for reversal. The court should have submitted to the jury the question whether or not the plaintiff was without fault, and the defendant was at fault, under all the circumstances, and should not have instructed the jury as he did in the latter portion of the charge above quoted. This objection, however, was not urged in the motion. If the city caused the situation of peril—caused the ditch to be dug, and thus created the emergency, and the plaintiff put himself in a position of danger, it was a question for the jury to say, under all the evidence, whether he acted with ordinary care and prudence, and what was the proximate cause of the injury. *L. & N. R. Co.* v. *Cline,* 136 *Ga.* 863, 865 (72 S. E. 405) ; *Wilson* v. *Central Railway Co.,* 132 *Ga.* 215.

2. Error is assigned upon the following charge of the court: "Then, gentlemen, in determining what weight you will give the evidence of the witnesses, any and all of them, you may look to them as they appear upon the stand, take their manner of testifying, their interest or want of interest in the case, their feeling, prejudice, bias, relationship to the parties and to the case, or anything of the kind that may appear from the evidence, and you may believe that witness or those witnesses who have the best means of knowing the facts about which he or she testifies, and the least inducement to swear falsely; and with these rules determine what

the truth of the evidence is, and let your verdict speak the truth as you may find it." On substantially the same charge as the one complained of here, this court held, in the case of *Nashville, Chattanooga & St. Louis Railway* v. *Hubble,* 139 *Ga.* 300 (76 S. E. 1009), that it was "error to instruct the jury that they 'may believe that witness or those witnesses who have the best means of knowing the facts about which he or she testifies, and the least inducement to swear falsely,' without a qualification that the witnesses in all other respects are found to be equally credible." The ruling in that case is controlling on the question presented to us for decision in this. The error was harmful in the present case, and will cause a reversal. There was a conflict in the evidence on the question as to whether the plaintiff and the defendant were each negligent. The testimony of plaintiff's witnesses tended to show that there were only two lanterns, or signal lights, on the ditch—one at each end. That for the defendant tended to show that there were three red lights instead of two, and that all of them were lighted. And some conflict existed as to where the lights were placed. The evidence was also conflicting as to whether the plaintiff was intoxicated at the time of the injury. The charge being without the qualification that if the witnesses were of equal credibility, it tended to mislead the jury into thinking that the court meant that they might believe a particular witness or class of witnesses in preference to other witnesses. See *Louisville & Nashville R. Co.* v. *Rogers,* 136 *Ga.* 674 (3), 675 (71 S. E. 1102).

3. Complaint is made that the court erred in admitting the testimony of Dr. Rollins as to whether or not on a previous occasion the ditch in question had been well lighted, and in admitting his testimony that a few days prior to the injury he had passed the ditch and noticed only two lights. The objection was that the previous condition of the ditch as to being lighted or not was immaterial upon a consideration of the question as to whether or not it was properly lighted on the night of the injury. And we so hold. One isolated case of negligence does not throw any light on the question. The general rule is that the fact that the same or another person for whose conduct the defendant is responsible did a similar negligent act, or showed similar negligent management, can not be shown. 8 Enc. Ev. 939. It was held by this court that it was erroneous to permit a witness to testify over objection, in a

suit against a railway company, that "They killed a good many stock out in that way; they killed the mules and cows. It has not been a year since they killed a mule right below where they killed mine." *Central Railway Co.* v. *Ross,* 107 *Ga.* 73 (32 S. E. 904).

4. A witness was allowed, over objection, to testify in substance that a red light in a street meant not to drive over it, and two red lights placed 30, 40, or 50 feet apart in a street meant to drive between them. He testified to no general custom, either in this municipality or in municipalities generally, to furnish a basis for any such statement. In fact his testimony showed that he was not testifying to a fact, but to his own conclusion or opinion as to what lights so placed meant. The only ground given by him for so stating was that his common sense taught him that such was the meaning of lights thus placed. This was plainly merely an opinion or conclusion on his part, and was inadmissible.

5. The charge complained of in the tenth ground of the motion for a new trial was that the plaintiff would be entitled to recover, "if he was not at fault, and the defendant was at fault in not keeping its streets at that place in a reasonably safe condition." Error is assigned on this charge, because it nowhere instructs the jury as to the probability of negligence on the part of the plaintiff's companions in the buggy, to whom he had entrusted himself, as tending to prevent a recovery. By reference to the general charge it appears that the court did not charge on the subject of whether the plaintiff's companion (who was driving) was guilty of negligence, and, if so, whether such negligence was the proximate cause of the injury to the plaintiff. The testimony tended to show that the plaintiff and one of his companions had hired a livery-stable horse and buggy, and that at the time of the injury it was being driven, with their consent, by a niece of one of them. There was also evidence which tended to show that the horse was being negligently driven. In view of this evidence, we think it was error to fail to charge on the subject of imputed negligence, and whether it was the proximate cause of the injury.

6. The 12th ground of the motion assigns error on the ground that one of the jurors was disqualified because of relationship to the plaintiff. The court upon request of counsel asked all of the jurors whether any of them were related by blood or marriage in any

way to the plaintiff, or to his companions who had similar suits pending against the defendant. The juror Henderson remained silent when the above question was asked. This juror remained on the panel, and served in the trial of the case. It is insisted that the juror "was a son of a brother of T. R. Henderson, whose wife is a sister of J. R. Phillips, and the sister of the mother of Belle McFarland; that the said juror was therefore related within the prohibited degrees" to one of the "companions and coplaintiffs of the plaintiff;" and that the fact was unknown to the defendant. In other words, the alleged disqualified juror was a nephew of the sister of Phillips and of the mother of Belle McFarland, one of the "coplaintiffs." This does not constitute a relationship within the prohibited degrees in this State, and the juror might well remain silent when the question was asked; and his so doing is no cause for a new trial, where no other question was asked him as to his family connection with the plaintiff. Judge Bleckley's opinion and quaint couplet as contained in the decision of the case of the *Central Railroad Co.* v. *Roberts*, 91 *Ga.* 513, 517 (18 S. E. 315), is apt to the facts here. He said: "Marriage will relate the husband by affinity to the wife's blood relations, but will not relate the husband's brother to any of her relations. The husband of the juror's stepdaughter was not related to the juror, but only to the juror's wife. The husband's brother, the plaintiff, was further off still: he was not related even to the juror's wife.

> The groom and bride each comes within
> The circle of the other's kin;
> But kin and kin are still no more
> Related than they were before."

7. The court erred in overruling the motion for a new trial.

*Judgment reversed. All the Justices concur.*