37247. ATLANTA JOINT TERMINALS *v.* KNIGHT.

Decided October 14, 1958—
Rehearing denied October 30, 1958.

*Maurice N. Maloof, Heyman, Abram & Young, Robert G. Young,* for plaintiffs in error.

*Reuben A. Garland, J. Walter LeCraw,* contra.

TOWNSEND, Judge. The first five special grounds of the motion for a new trial, numbered 4 through 8, inclusive, assign error on rulings of the trial court in permitting counsel for the plaintiff to put certain employees of the defendant on the stand for the purpose of cross-examination under the provisions of Code (Ann.) § 38-1801. Each of these grounds of the motion for a new trial complains of separate rulings by the court with respect to five different witnesses. As to each witness the defendants interposed objections to the cross-examination of the witness as agents of the defendants on the grounds that the employee was not an "agent" of the defendants as that term is used in Code (Ann.) § 38-1801; and, secondly, because this action being one under the Federal Employers'. Liability Act, the Federal law, under which the plaintiff has no such right, rather than the State law, was applicable. We shall dispose of these contentions in the inverse order in which they are made.

■ Rules of evidence prescribed by the General Assembly or laid down by judicial decision and prescribing what evidence is admissible or inadmissible, the quantum of proof necessary in given cases and the manner of producing and introducing evidence, and like rules, are rules of procedure rather than of substance. Such rules define and set out the manner and method of going ahead and conducting the suit and of enforcing the right as distinguished from rules of law defining the right itself. Intagliata *v.* Shipowners and Merchants Towboat Co. (Cal. App.), 151 Pac. 2d 133, 138. Such rules are governed by the law of the forum. 31 C. J. S. 509, Evidence, § 5. The procedure to be followed in the trial of cases brought in State courts under the Federal Employers Liability Act is the procedure prescribed in the jurisdiction where the case is brought rather than the form of practice and procedure prescribed for

the Federal courts. Brenizer *v*. N. C. & St. L. Railway, 156 Tenn. 479 (3 S. W. 2d 1053). It follows that whether or not the plaintiff could call employees of the defendants as their agents and subject them to cross-examination under the provisions of Code (Ann.) § 38-1801 is a question of procedure in the State court and is to be governed by the rules and procedure laid down by the Georgia law rather than by the Federal rules.

■ A determination of the second question as stated above depends as contended by counsel for the plaintiff in error on whether the persons called for cross-examination were in fact agents of the defendant corporation within the meaning of that word as used in Code (Ann.) § 38-1801. That Code section provides that in the trial of all civil cases either the plaintiff or the defendant shall be permitted to make, in the case of corporations, any agent or officer a witness with the privilege of subjecting such witness to a thorough and sifting cross-examination and with the further privilege of impeachment as if the witness had testified in his own behalf and were being cross-examined. As applied to the facts of this case, there can be no doubt that the meaning and intent of the legislature in the use of the word "agent" in this Code section is doubtful so as to require judicial construction of this language. This necessity of construction was recognized in *Garmon* v. *Cassell*, 78 *Ga. App.* 730, 739 (52 S. E. 2d 631), where this court expressly rejected the contention that this language refers only to an agent who was an agent of the party with relation to, or who had some connection with, the particular transaction under investigation. In that case, Judge Felton, speaking for the first division, said, "We find no support for such a contention. The act itself makes no limitation."

All of the witnesses involved were, at the time of the occurrence complained of and at the time of the trial, employees of the defendant or of one of the corporate partners of the defendant, and, as such, were subject to all of the pressures and possible prejudices in favor of the defendant which that relationship would tend to engender.

All or any one of these employees might have been used by the defendants when the trial of the case progressed to the point at

which they would present their evidence. Therefore, cross-examination of such employees as agents of the defendants under Code (Ann.) § 38-1801 was proper. These assignments of error are without error.

■ In grounds 9 and 10 of the motion for new trial, error is assigned on the admission in evidence over proper and timely objection by the defendant of the testimony of the witness Lazenby elicited by the plaintiff on cross-examination to the effect that the sand pipe under the sand house through which sand is directed into the sand boxes of the engines was defective so that it hung down three or four feet below its intended position on certain occasions prior to and after the occurrence complained of in this action. This evidence was objected to on the ground that it was immaterial and irrelevant because the evidence was not related to what had occurred at the time the plaintiff was injured and that there was no other evidence that the sand pipe was defective in the particular way testified to by the witness Lazenby on the occasion of the plaintiff's injury. The plaintiff contended that because of this defective condition the sand pipe was caused to hang in a lower position and could not be raised back up out of the way. He contended that on the occasion of the injury sued for this sand pipe was hanging down out of the proper position and that his head struck the sand pipe causing the injuries complained of.

The fundamental rule is that the evidence must be relevant to the facts in issue and must tend in some measure to prove or disprove such facts. 20 Am. Jur. 278, Evidence, § 302. However, as was said in Emerson v. Lowell Gas Light Co., 3 Allen (85 Mass.) 410, 417, "Each separate and individual case must stand upon and be decided by the evidence particularly applicable to it." Whether particular evidence objected to on the ground of irrelevancy is in fact admissible or not in the final analysis depends very largely upon the circumstances of the particular case, and a decision of that issue must in many cases be left to the sound discretion of the trial judge. See 22 C. J. 743, 744, Evidence, § 834. Applying these principles to the instant case and in view of all the facts and circumstances shown by the evidence, we hold that the trial judge did not err or abuse his

discretion in permitting the plaintiff to elicit the testimony from the witness as complained of in these special grounds of the motion for a new trial. There was some other evidence introduced which would have authorized the jury to find that the plaintiff's injury was occasioned by the low-hanging sand pipe and this evidence of the witness Lazenby was admissible to illustrate the cause of the low-hanging sand pipe and to illustrate the negligence of the defendant in permitting this cause to continue. The cases of *Atlantic Coast Line R. Co.* v. *Brown,* 93 *Ga. App.* 805 (92 S. E. 2d 874); *Hollomon* v. *Hopson,* 45 *Ga. App.* 762 (8) (166 S. E. 45); *City of Dalton* v. *Humphries,* 139 *Ga.* 556 (3) (77 S. E. 790) cited by the plaintiff in error in support of its contentions do not require a different ruling from that here made.

■ In ground 11 the defendant complains of the refusal of the trial court to grant a mistrial on motion of the defendants on account of numerous similar instances of questioning of prospective jurors by counsel for the plaintiff. At the time of the occurrences complained of in this ground of the motion for a new trial, the jurors were being questioned by counsel for the plaintiff under the provisions of Code § 59-705. This Code section as amended provides: "In all civil cases it shall be good cause of challenge that a juror has expressed an opinion as to which party ought to prevail, or that he has a wish or desire as to which shall succeed. Upon challenge made by either party upon either of these grounds it shall be the duty of the court to hear such competent evidence respecting the challenge as shall be submitted by either party, the juror being a competent witness, and the court shall determine the challenge according to the opinion it entertains of the evidence adduced thereon. In all civil causes the parties thereto, shall have the right to an individual examination of the panel of jurors from which the jury is to be selected, without interposing any challenge. . . Such examination shall be conducted after the administration of a preliminary oath to the panel . . . and in such examination, the counsel for either party shall have the right to inquire of the individual jurors examined touching any matter or thing which would illustrate any interest of the juror in the cause, including any opinion as to which party ought to prevail, the

relationship or acquaintance of the juror with the parties or counsel therefor, any fact or circumstance indicating any inclination, leaning or bias, which the juror might have respecting the subject matter of the suit, or counsel or parties thereto, and religious, social and fraternal connections of the juror."

"Generally, a juror may be fully examined and asked any questions which are pertinent to show the existence of bias or prejudice with respect to the nature of the case or the subject matter of the litigation as well as with respect to the parties personally." 50 C.J.S. 1043, Juries, § 275(b). While hypothetical questions embodying a substantial outline of the case proposed to be made are not proper, because such questions tend to cause a juror to pledge himself to a future action if the evidence turns out to be that propounded by the hypothetical question, and thus to prejudge the case, nevertheless questions which only seek to ascertain that the juror's mind is free of preconvictions which might cause him to do just this are entirely proper. The first question propounded by counsel for the plaintiff was subject to the defect that it sought to pledge the juror to a specified verdict in case the evidence should be as propounded in the hypothetical question, and the court properly sustained an objection to this question and certain others along the same line. The questions finally permitted were as follows: "If it appeared to you that the damage inflicted was the result of the defendant's negligence, do you have any feeling that $300,000 asked by the plaintiff would be more than you would find, now, if you thought that was the evidence?" On objection the question was rephrased: "I will put it this way: do you have any qualms against a judgment. which—I will ask you this question: $300,000 is quite a sum of money." On further objection the final questions were: "Would you have any hesitancy in bringing in a verdict of $300,000 if you believed when the evidence is submitted that this man had been damaged that much under the evidence that you had heard? In other words, I am not asking him to bring in a verdict, but some people just wouldn't bring in a verdict for that much money. . . All right. You heard the question. I mean you don't belong to any belief or have any belief that no man should ever have $300,000

if he is entitled to it? . . . And you have the courage to write such a verdict if you were accepted on the jury and you believed it to be just?" As to another juror, counsel asked: "If we prove to you he is entitled to a judgment in that amount, will you bring in a verdict in the amount of $300,000?" On objection the court rephrased this question as follows: "I understood the question to be if it were proved that the plaintiff was entitled to recover $300,000 if the juror would be willing to find a verdict to that effect. That means that if under the evidence and the law as given in charge if the plaintiff were entitled to recover $300,000 would the juror be willing to award that amount." Again, counsel for the plaintiff asked a lengthy hypothetical question, which the court again rephrased, whereupon counsel asked: "Would you have any hesitancy, any feeling of reticence, to give such a verdict in the amount of $300,000 if you believed it was just and fair under the evidence and the law?" Again he asked, "If in your honest opinion the plaintiff is entitled to damages that he sues for $300,000, would you write such a verdict?" "In the light of the questions heretofore propounded I want to ask you would you have any hesitance in awarding $300,000 in this case?" "If you are convinced under the rules of law as given by the court that this man has been damaged $300,000, would you write a verdict for $300,000?" The last question was rephrased by the court as follows: "If the defendant was liable and you felt that the plaintiff was entitled to recover under the evidence and the law and you felt that his damages under the evidence and the law amounted to $300,000, would that be your verdict?"

In Temperly v. Sarrington's Administrator, (Ky.) 293 S. W. 2d 863, questions asked prospective jurors on voir dire as to whether they had conscientious scruples which would prevent them from returning verdicts in the full amount sought if the law and evidence warranted such verdicts were held not an abuse of the trial court's discretion.

Under the broad sanction of Code (Ann.) § 59-705 it must necessarily be held that prejudice as to the size of verdicts is as much comprehended under the subject matter of civil actions as the nature of the cause of action. The questions sought to

probe the jurors' minds for prejudice in an abstract sense. Accordingly, such questions should be phrased in the most general terms, and in such a manner that the juror cannot feel he is being pledged to a future action, but only that he is being queried on his present convictions. Here, some of the questions asked by counsel did not meet these requirements, but as to such questions the court either sustained an objection or rephrased the question so that it, came in a proper form. The court then very carefully instructed the jury that nothing which had occurred in the voir dire examination could in any way influence their judgment or their verdict. The questions which were answered were proper questions. One juror admitted that he would hesitate to return a verdict in the amount sued for; the others replied to the contrary. The actual amount of the verdict was $40,000, or about 13% of the amount mentioned in the voir dire questions.

Accordingly, even if it could be said that the voir dire questions finally permitted were objectionable, and even if the instructions of the court were not sufficient as a matter of law to cure any irregularity therein, it is obvious from the small size of the verdict compared with the amount sued for that the questions were not, as a matter of fact, harmful to the complainant. This ground is without merit.

■ Error is assigned in special ground 13 on the denial of a motion for mistrial made by counsel for the defendant because of certain remarks of counsel for the plaintiff incorporated into objections to questions asked on cross-examination of one of the plaintiff's witnesses, a psychiatrist. One of the remarks incorporated in the objection was that counsel was trying to trick his witness "by asking him a question when the witness previously probably has made a different answer to it." Another was, "This man has just gotten back from the Bar Association where he made an address and we pulled him off the train and put him right up." At this point the court instructed the jury to disregard the remark, and said to counsel for the plaintiff: "That is an improper statement, Mr. Garland; it has nothing to do with this case." By so doing, the court met the requirements of Code § 81-1009, both as to instructing the jury and as

to rebuking counsel. *Wells* v. *State,* 194 *Ga.* 70(5) (20 S. E. 2d 580); *McCoy* v. *Scarborough,* 73 *Ga. App.* 519, 523 (37 S. E. 2d 221). This court does not agree with the contention of the plaintiff in error that the statements made by opposing counsel in his objection (improper as some of them admittedly were) were so inflammatory and prejudicial that no action on the part of the court short of the grant of a mistrial could have cured them. The instructions on that point were full and fair, and the discretion of the trial court in taking corrective action short of the grant of a mistrial will not be disturbed.

■ Special ground 12 assigns error because the court refused to grant a mistrial on account of an alleged prejudicial statement made by counsel for the plaintiff in the presence of the jury. It is sufficient to say as to this ground that it shows that counsel for the plaintiff made in the presence of the jury an explanatory statement which completely removed any harmful effect that the statement complained of may have had. For this reason, this ground of the motion does not show error.

Grounds 14 and 15 complain of alleged prejudicial statements for the plaintiff in his closing argument to the jury, but neither of these grounds shows that any ruling of the court was invoked on account of such statements. They, likewise, therefore, show no error requiring the grant of a new trial. Ground 16 of the amended motion is merely an amplification of the general grounds which have been expressly abandoned by counsel for the plaintiff in error in this court and this ground requires no ruling thereon.

The trial court did not err in denying the motion for new trial.

*Judgment affirmed. Felton, C. J., and Nichols, J., concur. Gardner, P. J., and Quillian, J., concur specially. Carlisle, J., dissents.*

GARDNER, Presiding Judge, concurring specially. I concur in the result of the majority opinion except I do not agree that the questions propounded to the jurors were proper. However, I am of the opinion that under the facts of this case these questions were harmless.

I am authorized to say that Quillian, J., joins in this special concurrence.

CARLISLE, Judge, dissenting. I cannot agree with the ruling made by the majority in the fourth division of the opinion and with the judgment of affirmance as to special ground 11 of the motion for a new trial. First of all, I wish to point out that the assignment of error in this ground is not simply that the court erred in permitting a particular question, or particular questions, to be propounded by counsel for the plaintiff. The assignment of error in this ground is on the judgment of the trial court denying a motion for mistrial and the basis for the motion for mistrial was that the line of questioning by the plaintiff's attorney of all the jurors, each in the presence of all the others, was of such character as to create an atmosphere inimical to a fair consideration of the case by the jury, that the statements by counsel for the plaintiff in the questions propounded to the jurors and frequently repeated in the presence of the jurors were prejudicial and created an undue emphasis of the possibility or propriety of a large verdict, and, "that the questions presented were of such a character that, prior to the introduction of any evidence and the receipt of any instructions from the court, they had created an air of sympathy in the plaintiff's favor, which was evidenced when the juror who was the twenty-fourth juror to be questioned was forced to volunteer, referring to the plaintiff, 'I can sympathize with him now'; that the questions propounded by plaintiff's attorney were not conducive to a proper and fair trial of the case."

Of course, if the questions thus propounded by counsel for the plaintiff were within the range of "the broad sanction of Code § 59-705" as amended, the allowance by the court of reasonable repetition of these questions to the jurors would not constitute error. Ground 11 of the motion for a new trial shows that the questioning of the 24 prospective jurors in this vein continued for almost two days during the selection of the jury. During the questioning of the first juror, counsel for the plaintiff propounded a question to him which was held by the trial judge to be improper on objection of counsel for the defendant; nevertheless, this ground shows that counsel for the plaintiff repeatedly sought to propound to the same juror and to other jurors similar questions which were objected to and some of

which were ruled out by the trial judge and others of which the trial judge found it necessary to rephrase in his own language.

As illustrative of this, this ground shows that after several of the jurors had been questioned and numerous rulings on the propriety of the questions sought to be propounded by counsel had been made by the trial court, one of the prospective jurors, Dewey N. Smith, was asked the following question in the presence of both panels: "The defendant claims damages for loss of capacity to labor, for loss of the right 'to labor and work, for physical pain and suffering, for mental derangement and mental agony, for fear, for shock, and for visual hysteria, and for his health, somatic injuries, for the loss of his wages, for the money that he owes for doctors now and for money in the future. He says he is permanently injured. He lays his damages in the sum of $300,000, including money that he would have made if he was not injured. The injury having damaged his brain and caused him to suffer aberrations, seeing things he didn't see, delusions, loss of memory and hallucinations; and if it appears in the evidence in this case that he was examined by doctors and some found an injury to his right eye, one in particular who examined him before the suit was filed, and he communicated to his counsel that he was blind in his right eye, and thereafterwards, a year later, the doctor examined him again and said that he was a malingerer and a balker and had misrepresented it to him and his belief was the result of his mental condition, this traumatic neurosis that you heard me refer to when I questioned Juror Heptinstall, and if he is damaged in this way, where he is incapacitated to work, and the evidence shows that he has not worked or had any regular earnings since the date he was injured; if, after you hear the charge of the judge who will give you the law, which you will take from the court and which you swore you would take from the court, and you hear the evidence given to you on the witness stand and the documentary evidence as introduced in the case, and, if, from the evidence, and you take the law from the court, you believe he can recover for those items and they total $300,000, and you believe that that would be a fair judgment in the light of the charge and in the light of the evidence, would you write a verdict for $300,000?' "

This question was objected to by counsel for the defendants, and it was clearly objectionable as had been recognized by the court in one of its previous rulings, but instead of ruling the question out, the court undertook to rephrase the question by stating that he "understood the purport of the question was that if under the law and the evidence the juror was of the opinion that the plaintiff was entitled to recover $300,000, if he would so find," and he, thereafter, ruled that this was a proper question and permitted counsel for the plaintiff to continue to question the juror repeatedly rephrasing counsel's question.

It appears from this ground that all the jurors were repeatedly asked if they would have any hesitancy or feel any reticence in bringing in a verdict for the plaintiff in the amount of $300,000 if they believed that it was just and fair under the evidence, and the court on several occasions rephrased even the proper questions of counsel for the plaintiff by stating in language, for example, "the question is just whether or not if the juror thought the plaintiff was entitled to recover $300,000 under the law and the evidence he would hesitate to do what the juror thought he ought to do," and other similar language.

As was said in 35 C. J. 389, Juries, § 437, "The extent to which parties should be allowed to go in examining jurors as to their qualifications cannot well be governed by any fixed rules. The examination is conducted under the supervision and direction of the trial court, and the nature and extent of the examination and what questions may or may not be answered must necessarily be left largely to the sound discretion of the court, the exercise of which will not be interfered with unless clearly abused."

In support of this statement, the editors of Corpus Juris cite four Georgia cases, all of which were decided, of course, prior to the 1949 and 1951 amendments to Code § 59-705, which as amended is quoted in the majority opinion. On pages 391 and 392 of 35 C. J., the editors citing numerous cases in support thereof from other jurisdictions state that: "While it has been held that hypothetical questions having correct reference to the law of the case, and which do not call for a prejudgment of the case or of any supposed case on the facts,

may, in the sound and reasonable discretion of the trial court, be propounded, it is not proper to propound hypothetical questions purporting to embody testimony that is intended to be submitted, regardless of whether or not they correctly epitomize the testimony. Thus it is not competent to examine jurors as to how they would act or decide in certain contingencies, or in case the court should give certain instructions, or in case certain evidence or a certain state of evidence should be developed on the trial, or as to his attitude toward a particular witness who is expected to testify in the case." No Georgia cases, however, directly bearing on the question have been found, and while there is perhaps some authority to the contrary, the rule as set forth in Corpus Juris and quoted above would seem to be the better and safer rule to follow. The fact that the prayer in the petition was for $300,000 damages and that the plaintiff contended that he had suffered certain particular injuries and that he was suffering a traumatic neurosis as a result of these injuries and that he also contended that he was permanently and totally disabled from performing gainful work and whether or not the plaintiff would prove these facts on the trial of the case, and whether the jurors would return a verdict in the amount sued for could not to my mind possibly illustrate any issue as to whether that particular juror had any interest in the cause or any opinion as to which party ought to prevail, nor could it illustrate any relationship or any acquaintance that the juror had with the party or their counsel, nor could it illustrate any fact or circumstance indicating any inclination or leaning or bias which the juror might have had respecting the subject matter of the suit or counsel or parties thereto, nor could it illustrate any religious or social or fraternal connection of the jurors. As broad as is the field of investigation in determining the individual juror's qualifications allowed by Code (Ann.) § 59-705, I do not think it is broad enough to allow the questioning permitted by the trial judge in this case. Such line of questioning was undoubtedly calculated to prejudice the minds of the jurors in advance of the trial of the case and before the introduction of evidence in favor of the plaintiff's contentions respecting the severity of his injuries and the ex-

tent of his damages, and this prejudicial and harmful effect was probably not removed even though the judge instructed the jury which was finally drawn and selected to try the case, "Now, Gentlemen of the Jury, thus far in the case there has been no evidence adduced before you, as you, of course, know. During the course of the selection of the jury counsel on both sides have propounded to the two panels and to members of the two panels certain questions as permitted by law for the purpose of enabling counsel to be assisted in the selection of the jury, the law being that from the panel of twenty-four qualified jurors counsel selects twelve, each side striking six. The law permits certain questions to be asked to assist counsel. Certain questions have been asked of you and of others in your presence and hearing and certain statements have been made in your presence and hearing. Those statements, of course, as you know, are not evidence in the case and not to be considered by you as such. There has been no evidence in the case. You know nothing about the facts of the case. . . Nothing which has heretofore transpired can in any way influence your judgment about this case or influence your verdict. It cannot in any way have that effect, for the law is that it cannot and your oaths as jurors would forbid it to have such effect. You have sworn you shall well and truly try each case submitted to you during the 'present time and a true verdict give according to the law as given you in charge and the opinion you entertain of the evidence produced before you to the best of your skill and knowledge, without favor or affection to either party, provided you are not discharged from the consideration of the case submitted, so help you God.' "

Accordingly, I think that the court's action in permitting the repetitious reference to $300,000 and to the facts which plaintiff contended he would prove prior to the introduction of any evidence and prior to the opening statements of counsel probably had the effect claimed by the plaintiff in error and did in fact create an atmosphere which prevented a fair consideration of the case by the jury. My views in this regard are strengthened by the fact that counsel for the plaintiff, after securing a ruling from the court on the propriety of his line of

questioning, continued to repeat questions which he knew the court had ruled to be improper, and, as shown by this ground, the court repeatedly had to rule these questions out, but, in fact, permitted one of them to stand over objections of counsel for the defendants. I do not think that the court's instruction could possibly have removed the harmful impression planted in the jurors' minds by almost two days of questioning as to their views with respect to large verdicts. Neither do I think that the fact that the jury returned a verdict for a *mere* $40,000, where the amount sued for was $300,000, can be said to indicate that the conduct of counsel in this respect was harmless. The evidence in this case was in sharp conflict on almost every issue. I think it is obvious that the repeated contention by counsel for the plaintiff that his client had been damaged in the amount of $300,000 could have and very probably did have some effect on the size of the verdict rendered by the jury. For these reasons, I think the trial court erred in denying the motion for a mistrial and in thereafter overruling the 11th ground of the motion for a new trial.

I also dissent from the ruling of the majority in division 5 of the opinion and the judgment of affirmance with respect to ground 13. It is well settled in Georgia that, "Where counsel in the hearing of the jury make statements of prejudicial matters which are not in evidence, it is the duty of the court to interpose and prevent the same; and, on objection made, he shall also rebuke the counsel, and by all needful and proper instructions to the jury endeavor to remove the improper impression from their minds; or, in his discretion, he may order a mistrial if the plaintiff's attorney is the offender." Code § 81-1009. While under the foregoing Code section, it is within the court's discretion whether he shall grant a mistrial in cases of this nature, his failure to rebuke counsel *and* by all needful and proper instructions to the jury endeavor to remove the improper impressions from their minds was error. *Atlantic Coast Line R. Co.* v. *Coxwell,* 93 *Ga. App.* 159, 168 (91 S. E. 2d 135). The conduct on the part of counsel for the plaintiff as outlined in this ground of the motion for new trial was highly improper and was subject to the objections raised by counsel for the defendant. It is

certainly improper for one counsel to impugn the integrity and sincerity of opposing counsel in the presence of the jury, and this is especially so where, as in this case, the offending counsel is a prominent and successful member of the Bar and widely known by the general public. Furthermore, the probability of harm to the defendant is great where, as in this case, the evidence made close and doubtful issues as to the liability of the defendant and the extent and the severity of the plaintiff's injuries. While the court in this case did undertake to instruct the jury to disregard the improper statements of counsel for the plaintiff, I do not think that the instruction of the court to the jury nor the mere statement by the court to the offending counsel that his conduct was improper constituted a sufficient rebuke of counsel as is required under the foregoing rules of law. For these reasons, I think the trial court should have granted a mistrial on account of the conduct as complained of in special ground 13, and that the court erred in overruling that ground of the motion for a new trial. Otherwise, I concur in the opinion of the majority.