A95A1747. WATSON et al. v. CITY OF ATLANTA.
(466 SE2d 229)

RUFFIN, Judge.

William L. Watson and six other individuals ("the plaintiffs") own apartment units ("multi-family units") located in College Park, Georgia. These multi-family units are located near the William B. Hartsfield Atlanta International Airport which is owned and operated by the city of Atlanta ("the city"). In 1984, the city developed the Aircraft Noise Exposure Maps & Noise Compatibility Program ("the program") to reduce land uses around the airport which were not compatible with the noise generated by the airport. As part of the program, the city purchased single-family residential property near the airport. The program did not provide for the purchase of multi-family units such as those owned by the plaintiffs. When the city refused to buy plaintiffs' units, they brought the instant action for nuisance resulting from the noise and inverse condemnation.

The case was first tried on April 18, 1994. At the conclusion of the plaintiffs' evidence, the court granted the city's motion for directed verdict on plaintiffs' nuisance claims. The jury deliberated on the remaining claims but was unable to reach a verdict. Accordingly, a

mistrial was declared. At the conclusion of the second case, the jury returned a verdict in favor of the city. Plaintiffs appeal the court's denial of their motions for new trial and judgment notwithstanding the verdict. We affirm in part, reverse in part, and remand in part.

1. Plaintiffs alleged that the city's acquisition of single-family units as opposed to multi-family units such as plaintiffs' was arbitrary, capricious, irrational, and bore no direct relation to the goals of the program; accordingly, plaintiffs alleged the program violated the equal protection clause of the Fourteenth Amendment of the United States Constitution. They now appeal the grant of summary judgment to the city on that issue.

With respect to the distinction between single- and multi-family units, the program states in part as follows: "Multi-family-residential was not included as a noise sensitive land use. People who own and reside in single-family residences in the Atlanta Airport Environs have tended to be more sensitive to aircraft noise levels than those who live in apartments or other rental multi-family residences. The high apartment occupancy rates (96 to 98 percent) in the Airport Environs indicate that there is a strong rental market in the area. Typically, homeowners demand more use and enjoyment from their property than people who are renting. This stands to reason since they have invested a considerable amount of time and money in their homes and do not have the flexibility of choice that a renter has in moving away from a noisy area."

Plaintiffs argue that a fundamental right was affected by the city's classification. They contend that the city bought only single-family residences which it ultimately burned and razed along with the surrounding foliage. This action created a "wasteland" surrounding the multi-family units as well as increased noise because the former homes and foliage had absorbed some of the noise from the airport. As a result, plaintiffs contend they have been forced to lower rental rates, have experienced lower occupancy in the units, and have been unable to sell the property.

Plaintiffs also argue that they are similarly situated to the owners of single-family residences, but as a result of the city's classification, they have been forced to shoulder the problems with a noisy wasteland. This situation, they argue, is violative of the equal protection clause which is "intended to prevent extraordinary benefits or burdens from flowing to any one group." *Bickford v. Nolen*, 240 Ga. 255 (240 SE2d 24) (1977).

"When assessing equal protection challenges, a classification is tested under a standard of strict judicial scrutiny if it either operates to the disadvantage of a suspect class or interferes with the exercise of a fundamental right. [Cit.]; *Ambles v. State*, 259 Ga. 406, 407, 383 SE2d 555, 557 (1989)." *Provident Mut. Life Ins. Co. &c. v. City of*

*Atlanta,* 864 FSupp. 1274, 1291 (N. D. Ga. 1994). If the classification affects neither a suspect class nor a fundamental right, then it must bear a rational relationship to a legitimate state purpose. See *Horton v. State Employees Retirement System,* 262 Ga. 458 (2) (421 SE2d 703) (1992); *Provident,* supra.

Pretermitting whether plaintiffs have been deprived of a fundamental right by virtue of the classification's impact on their ability to use or dispose of the property,[1] we find that the court erred in holding that the classification bore a rational relationship to the goal of reducing land uses which are incompatible with the noise generated by the airport. We acknowledge that generally if there is any set of facts upon which a court could sustain a distinction between two entities, the classification will withstand an equal protection challenge. *Smith v. Cobb County-Kennestone Hosp. Auth.,* 262 Ga. 566 (1) (b) (423 SE2d 235) (1992). In this case, however, there are no actual "facts" which support the distinction between single-family units and multi-family units in fulfilling the goal of reducing land uses which are not compatible with the noise generated by the airport. Rather, the program simply sets forth the unsupported conclusion that multi-family units are less affected by and thus more compatible with the noise generated by the airport. In fact, the FAA's "Noise/Land Use Compatibility Guidelines," which makes no distinction between single- and multi-family residences, belies this conclusion. The city provides no competent evidence in the form of verifiable apartment occupancy rates or verifiable statistics to prove that single-family homeowners are more affected by the noise than are multi-family renters. Nor does the city provide competent evidence to prove any impact on the community which would result from the inclusion of multi-family residences in the program. The defect in the classification is that it draws a line between otherwise identical groups — residences in the vicinity of the airport — without an objective basis for doing so. As Justice Blackmun stated in a separate, concurring opinion in *Logan v. Zimmerman Brush Co.,* 455 U. S. 422 (102 SC 1148, 71 LE2d 265) (1982), the connection between the means of achieving the goal and the end "must have some objective basis." Id. at 442. Moreover, the plaintiffs presented evidence that the classification and the ensuing acquisition and subsequent destruction of single-family residences actually resulted in increased noise for the multi-family units. Thus, there was an insubstantial relationship between the classification and the goal of reducing noncompatible land use. Accordingly, the trial court erred in finding that the classification bore a rational relation-

---

[1] See in this regard *Clark v. State,* 219 Ga. 680 (135 SE2d 270) (1964); *Woodside v. City of Atlanta,* 214 Ga. 75, 83 (3) (103 SE2d 108) (1958).

ship to the goal of reducing noncompatible land use by buying those properties most affected and in granting the city summary judgment on plaintiffs' equal protection claim. We therefore remand for a new trial on this issue. Because several of the issues enumerated as error by plaintiffs are likely to arise again in the retrial, we now address them.[2]

2. The plaintiffs contend that the court erred in charging the jury on former 49 USC § 2107 (now 49 USC § 47506) in this case, arguing that the charge was an incorrect statement of law. In addition, they contend that the application of the statute results in a waiver of their eminent domain rights under Art. I, Sec. III, Par. I of the Georgia Constitution and that the federal statute cannot preempt these state law remedies to recover for the nuisance resulting from the noise. Although there is some confusion in the record regarding the numbering of the charges, it appears that following the court's instructions to the jury, plaintiffs objected to the court's charge on the statute. The city does not dispute this in its brief.

49 USC § 2107 provides that no person "who acquires property or an interest therein after February 1980, in an area surrounding an airport for which a noise exposure map has been submitted . . . may recover damages for noise attributable to the airport . . ." if the airport has complied with certain requirements, including publishing the map on at least three occasions in a newspaper of general circulation in the county. Thus, the charge to the jury was a correct statement of the law. However, the trial court never ruled on the applicability of the charge to this particular case. The record shows that the city argued in its motion for summary judgment that it was immune from damages for noise under the statute. Plaintiffs' response to the motion included the argument that the statute did not preempt their state eminent domain rights. The court denied the motion, finding that issues of fact remained as to the applicability of the statute. Our review of the record and transcript does not show that the question of the applicability of the federal law was ever resolved by the court. Thus, we remand this issue to the trial court for a determination of the applicability of the statute to this inverse condemnation action.

3. The plaintiffs contend that the trial court erred in excluding plaintiffs' Exhibits 3 and 19-A. Plaintiffs' Exhibit 19-A was a land use compatibility guideline which shows which land uses are compatible with the noise generated by the airport. The record shows that the trial court originally denied the city's motion in limine to exclude Exhibit 19-A on grounds that OCGA § 24-3-37 was inapplicable to the

---

[2] Because the charge to the jury in the retrial will depend on the course of this case on remand and retrial, we will not address herein the jury charges plaintiffs complain of in their eighth enumeration of error.

evidence in question. However, after hearing argument on the provisions of 49 USC § 2106, the Aviation Safety Noise Abatement Act of 1979 ("Noise Abatement Act"), in effect at the time of trial, the court granted the city's motion in limine.

The Noise Abatement Act "was designed to assist airports and surrounding communities in developing and instituting programs to reduce existing noncompatible land uses. . . . In furtherance of this goal, airport owners are to prepare noise impact maps and noise compatibility programs to guide them in addressing noncompatibility problems. Recognizing that the threat of having those maps and programs used as evidence against airport owners might deter owners from pursuing the established goal, the Act provides the following prohibition: 'No part of any noise exposure map or related information described in section 2103 of this title . . . and no part of the list of land uses . . . which are normally compatible with various exposures of individuals to noise shall be admitted as evidence, or used for any other purpose, in any suit or action seeking damages or other relief for the noise that results from the operation of an airport.' 49 USC App. § 2106. [Cit.]" *Provident*, supra at 1293.

However, "aside from the full faith and credit clause of the Constitution, Congress would have no power to prescribe rules of evidence for State courts. [Cits.]" *Edmonds v. State*, 201 Ga. 108, 129 (6) (39 SE2d 24) (1946). Thus, the federal statute at issue here "would not apply as a rule of evidence in a State court. . . ." Id. See also *Atlanta Joint Terminals v. Knight*, 98 Ga. App. 482 (3) (106 SE2d 417) (1958), in which we held that the admissibility of evidence is a procedural question and thus governed by Georgia's rules and procedures rather than federal law. Because Georgia law has no prohibition against the admissibility of evidence such as that contained in Plaintiffs' Exhibit 19-A, the trial court erred in excluding the exhibit.

Likewise, plaintiffs argue that the court erred in finding that 49 USC § 2106 barred the admission of plaintiffs' Exhibit 3. However, the transcript does not show the reason for the court's exclusion of that exhibit. Moreover, we do not find nor do plaintiffs present any evidence that they objected to the exclusion of the exhibit. Accordingly, this part of the enumeration presents nothing for our review. See *Southeastern Ambulance Corp. v. Freeman*, 185 Ga. App. 119 (4) (363 SE2d 571) (1987).

4. The plaintiffs contend the court erred in allowing the city's airport noise expert, Andrew Bell, to testify about several exhibits he designed because Bell's testimony was based on facts not in evidence. We disagree.

Bell testified that the exhibits were prepared from flight progress strips and tower activity reports he received from the airport tower, documents which were not admitted into evidence. After reviewing

the documents and aerial photographs, Bell entered the information into a computer and generated the exhibits. Bell testified that the information he received from the tower was "the most accurate, best available information as to how the airport operates and what the traffic is." The manager of the control tower testified that the air traffic controllers were required to generate and maintain daily tower activity reports and flight strips and that there are 1,800 to 2,000 flight operations each day at the airport. Given the sheer volume of documents upon which Bell's testimony was based, the trial court did not err in allowing his testimony.

"The 'Summary of Voluminous Records Rule,' an exception to the best evidence rule . . . has been stated as follows: 'Where a fact could be ascertained only by the inspection of a large number of documents made up of very numerous detailed statements . . . , it is obvious that it would often be practically out of the question to . . . (require) . . . the production of the entire mass of documents and entries to be perused by the jury or read aloud to them. The convenience of trials demands that other evidence be allowed to be offered, in the shape of the testimony of a competent witness who has perused the entire mass and will state summarily the net result. Such a practice is well established to be proper.' [Cit.] All that is necessary in such a case is that the documents themselves be available to the court and to opposing counsel. [Cits.]" (Emphasis omitted.) *First Nat. Bank of Atlanta v. First Nat. Bank of Tucker*, 158 Ga. App. 843, 844 (282 SE2d 353) (1981). Because Bell personally reviewed the documents and the documents could be made available, if necessary, this enumeration is without merit.

5. In their seventh enumeration of error, the plaintiffs contend the court erred in granting the city of College Park's motion for summary judgment. Citing OCGA § 9-11-54 (b), the trial court entered a final judgment in favor of College Park on December 17, 1992. Under OCGA § 5-6-38 (a) the plaintiffs were required to file their appeal of that judgment within 30 days of its entry. Because they did not do so we have no jurisdiction to consider this appeal. See *Parks v. Atlanta Pub. School System &c.*, 168 Ga. App. 572 (2) (309 SE2d 645) (1983). We deny College Park's motion for a frivolous appeal penalty to be assessed against plaintiffs.

6. The plaintiffs contend the trial court erred in granting the city's motion for directed verdict on their nuisance claim in the first trial. In its brief, the city contends that it moved for a directed verdict on three grounds. However, the record does not contain a transcript of "the arguments and evidence [the city] presented to the trial court in support of its . . . motion nor does it contain the court's ruling thereon. . . . Under these circumstances, we must rely on the presumption in favor of the regularity of all proceedings in a court of

competent jurisdiction, assume that the evidence was sufficient to support the trial court's ruling and affirm the judgment." (Citations and punctuation omitted.) *City of Atlanta v. Starke*, 192 Ga. App. 267, 268 (1) (c) (384 SE2d 419) (1989).

*Judgment affirmed in part and reversed and remanded in part. Beasley, C. J., concurs in judgment only. Pope, P. J., concurs.*

DECIDED DECEMBER 5, 1995 — RECONSIDERATION DENIED DECEMBER 20, 1995 — 

*Chamberlain, Hrdlicka, White, Williams & Martin, Richard N. Hubert, David P. Thatcher*, for appellants.

*Charles F. Hicks, Clifford E. Hardwick IV*, for appellee.