**FIRST DIVISION**
**BROWN, C. J.,**
**BARNES, P. J., and WATKINS, J.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**July 1, 2025**

# In the Court of Appeals of Georgia

A25A0543. UNITED OBSTETRICS AND GYNECOLOGY, P.C. et al. v. ROBINSON et al.

BARNES, Presiding Judge.

Plaintiffs Dinesha Robinson and Robert Tumbling (collectively, the "plaintiffs"), filed this wrongful death action against certain defendants including Dr. Nicholas Chiera, United Obstetrics and Gynecology, P.C., and The Howard Center for Women's Health, P.C. (collectively, the "defendants"), for the deaths of their twins. A jury found the defendants liable and awarded the plaintiffs $10,500,000 in damages. The defendants appeal following the denial of their motion for new trial, arguing that the trial court erred by improperly instructing the jury and refusing to grant a mistrial during voir dire, and that the verdict was excessive. For the reasons set forth below, we affirm in part and vacate in part.

"When a jury returns a verdict, the evidence is to be construed in a light most favorable to the prevailing party with every presumption and inference in favor of sustaining the verdict." (Citation and punctuation omitted.) *Zweigel v. North Atlanta Obstetrics & Gynecology, LLC*, 374 Ga. App. 579, 579 (913 SE2d 719) (2025).

So viewed, the evidence shows that in April 2019, Robinson was nearly five months' pregnant with twins. Her pregnancy was high-risk, due to a prior miscarriage and preeclampsia, and she had been treated twice in the previous three weeks for a urinary tract infection ("UTI") by United Obstetrics and Gynecology ("UOG"), which was operating as The Howard Center. On the afternoon of April 3, 2019, Robinson presented herself at the emergency room of Tift Regional Hospital with lower abdominal pain around her bladder and an elevated heart rate — signs of infection. UOG's on-call obstetrician hospitalist suspected a UTI and ordered a series of tests to confirm or rule out the diagnosis.

Around 7:00 p.m., Robinson's care was taken over by Dr. Chiera, another on-call obstetrician with UOG. During the "hand-off" of care, the on-call physician informed Dr. Chiera about Robinson's high-risk pregnancy and the UTI tests, the results which had not yet been returned. Robinson's test results came back that

evening indicating an elevated white blood cell count and the presence of bacteria and red and white blood cells in her urine — signs of infection. Dr. Chiera received the lab results, but without examining or speaking to Robinson, discharged her without treatment shortly after 9:00 p.m.

The following day, Robinson began experiencing chills, persistent back pain, and a fever. She returned to the hospital, but by that point, the infection had spread to her uterus, where it caused a uterine infection and/or chorioamnionitis — intra-amniotic infection and inflammation. Dr. Chiera informed Robinson that her life was at risk and that the twins needed to be delivered immediately. Robinson's son was delivered stillborn, and her daughter died shortly after she was born.

Robinson and Tumbling sued UOG, The Howard Center, and Dr. Chiera for the twins' wrongful deaths.[1] At trial, expert testimony established that Dr. Chiera violated the standard of care by discharging Robinson on April 3, and that if she had been treated with antibiotics, the infection likely would not have spread and the twins would have survived.

---

[1] Robinson and Tumbling also sued the on-call physician, but he was dismissed from the case without prejudice prior to trial.

The jury found the defendants liable and awarded the plaintiffs $10,500,000 in damages — $5.25 million per child. The defendants filed a motion for a new trial, as amended, which was denied. This appeal followed, in which the defendants argue that the trial court erred by instructing the jury on aggravation of a preexisting condition and by refusing to declare a mistrial regarding plaintiffs' counsel's questioning during voir dire, and that the jury's damages award was excessive.

1. The defendants argue that the trial court erred by charging the jury on aggravation of preexisting conditions. According to the defendants, the instruction was not warranted by the evidence and it misled and confused the jury. We disagree.

We review an allegedly erroneous jury instruction de novo. See *White v. Stanley*, 369 Ga. App. 330, 331 (893 SE2d 466) (2023). In assessing whether a jury instruction was erroneous, it must be evaluated in the context of the trial court's jury instructions as a whole, including consideration of a preprinted verdict form. See *Fassnacht v. Moler*, 358 Ga. App. 463, 473 (1) (a) (855 SE2d 692) (2021). "Indeed, the only requirement regarding jury charges is that they were, as given, correct statements of the law and, as a whole, would not mislead a jury of ordinary intelligence." *Boone v. Vascular Surgical Assoc., P.C.*, 372 Ga. App. 547, 555 (2) (905 SE2d 199) (2024).

An erroneous charge, then, does not warrant a reversal unless it was harmful and, in determining harm, the entirety of the jury instructions must be considered. Even so, erroneous charges are presumed to be prejudicial and harmful, but this is not conclusive because the presumption of harm which arises from a charging error may be overcome by a review of the record as a whole.

(Citations and punctuation omitted.) Id.

In the instant case, referring to the twins as the plaintiffs, the trial court instructed the jury that

[n]o plaintiff may recover for injuries or disabilities that are not connected to the act or omissions of the defendants in this case. There can be no recovery for a particular plaintiff for any injury or disability that was not proximately caused by the incident in question. If you should find that, at the time of the incident, the plaintiffs had any physical condition, ailment or disease that was becoming apparent or was dormant, and if you should find that the plaintiffs received an injury as a result of the defendants and that injury resulted in any aggravation of a condition already pending, then the plaintiffs could recover damages for the aggravation of the preexisting conditions.

The defendants objected to this instruction on the ground that it was not adjusted to the evidence and that it could be confusing since the case involved wrongful death, not

aggravation of an existing injury to Robinson. The trial court overruled the objection and submitted the case to the jury.

After the jury began deliberations, it submitted four questions. The first question asked, "[C]ompensation to aggravation of patient's pre-existing condition, how is this determined?" The trial court told the jurors that "the recovery sought is for the alleged wrongful deaths of [the twins]" and that "they can read wrongful death in the charge that they have back there." The second note consisted of a full recitation of the aggravation instruction, followed by a question mark. The court responded that "this is not a question" and "if you have a question, please pose it." The jury then asked about Robinson's vital signs at the time of her initial discharge, and the court instructed the jury on where to find that information. In its final question, the jury asked, "Is compensation for injury resulting in an aggravation of a condition already pending outside the scope of our award calculation?" and the court answered, "yes, see verdict form."

As an initial matter, a preexisting condition charge was authorized by the evidence. Expert testimony established that the twins' health was inextricably intertwined with the condition of the uterine environment and their mother's

bloodstream, and that a bacterial infection such as Robinson's UTI compromised that environment, thereby creating a state of vulnerability. Thus, the jury could have found that the twins' condition of being housed in fragile, infected, and compromised environment was a "preexisting condition" that made them more susceptible to injury, and that the twins were injured by Dr. Chiera's negligence — for example, by delaying treatment and therefore allowing the infection to worsen — thereby aggravating that condition, i.e., leading to their deaths. Thus, the trial court did not err in giving this instruction. See *Jones v. Sperau*, 275 Ga. 213, 214 (2) (563 SE2d 863) (2002) ("If there is even slight evidence on a specific issue, it is not error for the court to charge the jury on the law related to that issue.") (citation and punctuation omitted).

We acknowledge that the jury's questions about the instruction "meant that the charge[ ] may not have been as clear and precise as could be desired." See *Fassnacht*, 358 Ga. App. at 473 (1) (a) (citation and punctuation omitted). But we conclude that any potential confusion about whether the aggravation charge authorized the jury to award damages for aggravation of Robinson's condition was cured by the trial court's direct and unequivocal responses to the jury's questions, in particular, its clarification

that the recovery sought was for the twins' alleged wrongful deaths; its confirmation that compensation *for an injury* resulting in an aggravation of a preexisting condition was outside the scope of the damages award;[2] and its reference to the verdict form, which provided separate line items for "the Value of the Life of" each child. See id. at at 472 (1) ("An initial erroneous charge, then, is cured when the context clearly shows a modification of the erroneous rule.") (citation and punctuation omitted). Further, the court's charge also included detailed instructions on calculating the measure of damages, and explicitly stated that the measure of damages "is the value of the lives of [the twins]." Thus, considering the jury instructions and verdict form as a whole, the charge was unlikely to confuse the jury. See id. at 473 (1).

---

[2] We note that the trial court's instructions, when read together, properly distinguish the unavailability of an award of damages in a wrongful death action for any *injury* that resulted in any aggravation of preexisting condition, which in this case could be the uterine infection and/or chorioamnionitis, from the permissible recovery of damages for the resulting aggravation from that injury — the twins' deaths. See *Bibbs v. Toyota Motor Corp.*, 304 Ga. 68, 77 (3) (815 SE2d 850) (2018) (explaining that "in a personal injury suit, a recovery can be had for pain and suffering, lost time, physician's bills, etc., *accruing prior to* the death of the injured person, but no recovery can be had for the 'full value of his life.' In the wrongful death action, a recovery can not be had for any of the damages recoverable in the former but for the 'full value of the life of the deceased,' from the time of his death. The damages recoverable in one case are not recoverable in the other; so that they do not overlap *in that respect*.") (citation and punctuation omitted; emphasis in original).

Further, contrary to the defendants' argument on appeal, the verdict of $10.5 million does not indicate that the jury improperly believed that it could award damages for Robinson's preexisting condition, as this number appears to be derived from plaintiffs' counsel's argument in closing that if the jury "believed *the value of the lives* of those two children" was $200 a day for 75 years, it could award "5-1/2 million dollars" each. (Emphasis supplied.) Accordingly, the defendants have established neither error or harm regarding the aggravation instruction.

2. The defendants contend that the trial court erred by refusing to declare a mistrial after the plaintiffs' attorney propounded questions to the venire during voir dire that impermissibly asked the potential jurors to prejudge the case. We discern no error.

Under OCGA § 15-12-133, the parties in a civil case have a right to individually question the prospective jurors concerning

> any matter or thing which would illustrate any interest of the prospective juror in the case, including any opinion as to which party ought to prevail, the relationship or acquaintance of the prospective juror with the parties or counsel therefor, any fact or circumstance indicating any inclination, leaning, or bias which the prospective juror might have

respecting the subject matter of the action or the counsel or parties thereto . . . .

And "[u]nder the broad sanction of [§ 15-12-133] it must necessarily be held that prejudice as to the size of verdicts is as much comprehended under the subject matter of civil actions as the nature of the cause of action." *Atlanta Joint Terminals v. Knight*, 98 Ga. App. 482, 489 (106 SE2d 417) (1958).

Nevertheless, "voir dire is not intended to pre-try the case on hypothesized facts and get jurors to commit to the outcome based on that speculative proof." *Ellington v. State*, 292 Ga. 109, 126 (7) (b) (735 SE2d 736) (2012), disapproved on other grounds by *Willis v. State*, 304 Ga. 686, 706 (11) (a), n.3 (820 SE2d 640) (2018). This is because "hypothetical questions embodying a substantial outline of the case proposed to be made . . . tend to cause a juror to pledge himself to a future action if the evidence turns out to be that propounded by the hypothetical question[.]" *Atlanta Joint Terminals*, 98 Ga. App. at 488 (4). Thus, "a trial judge should be cautious in allowing counsel to propound questions which ask the juror to assume that certain facts will be proven[,]" given that "[s]uch questions tend to improperly influence

10

jurors." *Waters v. State*, 248 Ga. 355, 363 (3) (283 SE2d 238) (1981). However, "[h]ypothetical voir dire questions are not *per se* improper." Id. And

> [s]ince the distinction between questions which ask jurors how they would decide issues of a case if and when such issues are presented and questions which merely inquire whether jurors can start the case without bias or prior inclination is not always crystal clear, the control of the voir dire examination is vested in the sound legal discretion of the trial judge and will not be interfered with by this court unless the record clearly shows an abuse of that discretion.

Id.; see also *Atlanta Joint Terminals*, 98 Ga. App. at 488 (4) ("[Q]uestions which only seek to ascertain that the juror's mind is free of preconvictions which might cause him to [prejudice the case] are entirely proper.").

During voir dire in the instant case, the plaintiffs's attorney told the potential jurors:

> [W]e're going to ask you to award damages for the death of the two children, . . . and we're going to ask you to award two million dollars each for those deaths. Does anybody feel like, oh, that's just too much money, I couldn't award that much money without hearing any of the evidence — that they . . . wouldn't be able to do that?

The defendants immediately asked for a sidebar and moved for a mistrial on the basis that the question asked the potential jurors to prejudge the case. After some discussion, the trial court denied the motion. The plaintiffs' attorney then pointed out that no one had responded to the question and asked if she was "allowed to explore" the topic. The court agreed, but said that it would "do research in the meantime." Voir dire continued, and the plaintiffs' attorney asked the panel: "[If] you have to decide this case based on the evidence, and if the underlying evidence supports an award of four million dollars, does anyone say, you know, I just can't award that much, I just won't do it?" Two jurors who responded affirmatively were eventually excused for unrelated reasons.

We conclude that the questions here were a permissible exploration of potential bias against substantial awards, rather than an improper request to prejudge the case. The questions did not ask the jurors to agree that hypothetical evidence *would* support a $4 million award. Rather, the questions probed the jurors' capacity to award that amount, thereby testing whether they held personal, arbitrary ceilings on damages that would prevent them from fulfilling their duties as jurors. See *Chambers v. State*, 327 Ga. App. 663, 665 (2) (760 SE2d 664) (2014) ("Prejudgment questions are those that

require a prospective juror to assume facts that are yet to be proved and to prejudge the case based on those assumed facts.") (citation and punctuation omitted). Accordingly, we find no abuse of discretion, and this enumeration is without merit. See *Atlantic Zayre, Inc. v. Meeks*, 194 Ga. App. 267, 270 (3) (390 SE2d 398) (1990) (finding no abuse of discretion where trial court allowed counsel to ask prospective jurors "whether they would hesitate to award a sum as large as $600,000 should it be warranted by the evidence"); see also *Ellington*, 292 Ga. at 126 (7) (b) (explaining that cases involving improper "pre-judgment questions" "have involved situations in which the question(s) at issue involved 'an outline of the case,' multiple detailed facts, wording that asked the prospective juror to commit to a particular verdict based on hypothesized facts, or requests for the jurors to opine on what facts they would consider important").

3. The defendants argue that the verdict was excessive, "either because its amount was not derived from the evidence presented at trial, or because it exceeded OCGA § 51-13-1's statutory cap on noneconomic wrongful death damages." We address each issue in turn.

(a) *Excessive verdict.*

The measure of damages for wrongful death is the full value of the life of the decedent, as shown by the evidence. This value consists of both the economic value of the deceased's normal life expectancy as determined by his expected lifetime earnings, plus the intangible element incapable of exact proof. The value of a child's life must be established by the enlightened conscience of an impartial jury as applied to the evidence in the case, including testimony as to such child's age, life expectancy, precocity, health, mental and physical development, family circumstances, and from the experience and knowledge of human affairs on the part of the jury.

(Citations and punctuation omitted.) *Dept. of Human Resources v. Johnson*, 264 Ga. App. 730, 738 (592 SE2d 124) (2003).

"The question of damages is ordinarily one for the jury; and the court should not interfere with the jury's verdict unless the damages awarded by the jury are clearly so inadequate or so excessive as to be inconsistent with the preponderance of the evidence." OCGA § 51-12-12 (a). "[A]n excessive or inadequate verdict is a mistake of fact rather than of law and addresses itself to the discretion of the trial judge who, like the jury, saw the witnesses and heard the testimony. In fact, the trial court's approval of the verdict creates a presumption of correctness which is not to be disturbed absent compelling evidence." (Citations omitted.) *Moody v. Dykes*, 269

14

Ga. 217, 221-222 (6) (496 SE2d 907) (1998). Indeed, "the threshold for an appellate court to set aside a jury verdict approved by the trial court under OCGA § 51-12-12 (a) is extremely high." (Citation and punctuation omitted.) *Rockdale Hosp. v. Evans*, 306 Ga. 847, 852 (2) (b) (834 SE2d 77) (2019).

In the instant case, the defendants argue that the jury's award "smacks of picking a number and putting it in the blank, as it is not rooted in specific evidence presented at trial," particularly because the "measure of damages . . . becomes little more than a guess when assessing lives that never had the chance to begin." In this vein, they assert that the plaintiffs "invited this kind of speculation" by arguing in closing that the jury could award $200 per day for 75 years — the average life expectancy of the twins based on a mortality table that was entered into evidence without objection. This argument is meritless.

While it is true that the plaintiffs "presented no evidence of medical expenses or other special damages" at trial, it is well established that "there is not, and cannot be in the very nature of this and other like cases, any evidence from which a jury could mathematically determine the value of the life of the deceased infant on the basis of either past or future earnings or future earning capacity[.]" *Collins v. McPherson*, 91

Ga. App. 347, 349 (2) (a) (85 SE2d 552) (1954); see also *Seaboard Coast Line R. Co. v. Duncan*, 123 Ga. App. 479, 481 (2) (181 SE2d 535) (1971) ("In cases of infants of tender years, it is impossible to give exact evidence of pecuniary value of the probable loss and the question of damages of the loss is left to sound judgment, experience and conscience of the jury without any exact proof thereof."). Even so, the jury did hear testimony about the family the twins would have born into, including testimony about the twins' siblings and the parents' devotion. In addition, the jury was statutorily authorized to rely on the mortality table for the purpose of calculating damages. See OCGA § 24-14-45; see also *Bibbs v. Toyota Motor Corp.*, 304 Ga. 68, 78 (3) (815 SE2d 850) (2018) (damages in a wrongful death action "cover damages from the point of actual death until the normally expected time of death, *as shown by mortality tables* or other evidence") (emphasis added). Under these circumstances, we cannot say that the amount of the verdict was improperly influenced by the plaintiffs' hypothetical, let alone that the amount of the verdict was arbitrary.

Furthermore, although the defendants assert that the "excessive award" was the result of the "improper voir dire questions" and an "unnecessary charge on aggravated of preexisting injuries," we have already determined that these issues were

not error. And, even assuming that the plaintiffs exploited the "high emotions" in the case by arguing that there were "two children's lives at stake" and turning closing argument into a "referendum" on Dr. Chiera, the defendants waived this issue by failing to object. See *Reliance Ins. Co. v. Bridges*, 168 Ga. App. 874, 888 (16) (311 SE2d 193) (1983) (defendants waived argument that plaintiffs' improper closing argument improperly affected the amount of the verdict by failing to interpose an objection below). Accordingly, the defendants have failed to establish that they are entitled to relief on this ground.

(b) *OCGA § 51-13-1 statutory cap.* The plaintiffs argue that the trial court erred by failing to reduce the verdict to the maximum amount allowable for noneconomic damages under OCGA § 51-13-1. In denying this ground, the trial court ruled that this issue was "foreclose[d]" by the Supreme Court's decision in *Atlanta Oculoplastic Surgery, P.C. v. Nestlehutt*, 286 Ga. 731 (691 SE2d 218) (2010), and that applying such caps would "defy Georgia's constitution." However, the trial court's reliance on *Nestlehutt* was misplaced, as that case did not decide the question of whether OCGA § 51-13-1's caps can be constitutionally applied to statutory wrongful death claims and "full value of the life" damages. See *Med. Center of Central Ga. v. Turner*, ___ Ga. ___,

17

\_\_ (\_\_ SE2d \_\_) (Case No. S25G0132, decided June 24, 2025). Consequently, because the trial court "did not apply the analytical framework set out by our precedent, the constitutional questions in this case have not been addressed by the [trial court] consistent with our precedent." See id. Thus, we vacate the court's ruling on this issue and remand for further proceedings consistent with this opinion.

*Judgment affirmed in part and vacated in part. Brown, C. J., concurs. Watkins, J., concurs fully in Divisions 2 and 3, and in judgment only in Division 1.*